On the Merits.
An examination of defendant’s pleadings shows that he does not, as plaintiff assumed he would, base title upon a tax sale in 1884, under an assessment made in the'name of Con.'E. Campbell, but upon a tax sale made in 1886, under an assessment made in that name. The record shows in 1884 the proceedings to which plaintiff alludes in his petition, but for some reason defendant has elected to ignore those proceedings, and to carry Campbell’s supposed ownership down to 1886, at which time he claims Campbell’s ownership was divested, and by Simon Witkowski acquiring the property at a tax sale.
The plaintiff asserts, and we think correctly, that there was no assessment of this property in 1885 as the property of Campbell. A description of the property was entered upon the assessor’s books in 1885, and in that description it is declared to be the property of Campbell, but no assessment was made upon this' entry; on the contrary, opposite the description is a statement that the entry was made through error, and reference is made to another page of the book, on which page the property is entered and assessed as the property of Simon Witkowski. The title under whieh the defendant declared being foundto have no existence, he is left under the pleadings as a possessor without title of the property since 1886 (Reynolds vs. Stille, 15 An. 544). The prescription of ten years set up by him obviously has no application under his own possession and that of Sample, Wilczinski and Simon Witkowski, and not holding under and through Campbell, *1480 he can not set up the latter’s possession and that of his authors and tack it to his own.
The original ownership of this property by John H. Martin is not questioned. Plaintiff and defendant both claim under him. We have seen that defendant himself has no title; we have, therefore, to inquire whether the plaintiff’s claim of ownership presented in a petitory action, be well founded or not. Defendant in possession contends that t e ownership of Martin was divested by a tax sale in 1874, at which sale one Annie Baldwin acquired the property, and he pleads in aid of that title the prescription of three and five years.
Though a defendant without title be entitled in a petitory action to set up against the plaintiff’s demand an outstanding title, the title-so setup must be a valid, legal, subsisting title. A possessor without title can not eke out a defective title in a third person by invoking prescription in its favor. That plea belongs to the party acquiring by the particular title and those holding under him, and not by one not in privity with him.
- The defendant has besides overlooked the fact that plaintiff is not seeking to invalidate a tax title. It is true that allusion is made by plaintiff to several tax sales, but this is not an action of nullity to set them aside; they are merely referred to as explanatory of the situation, and when referred to are stated to be absolute nullities. This action, as brought, is a petitory one, pure and simple. The tax proceedings and sales, so far as the plaintiff’s pleadings are concerned, may be really thrown out of view and are considered only as set up in defence.
Was the Martin title divested by the tax sale of 1873, at which Annie Baldwin became a purchaser? Plaintiff directs our attention to thirteen reasons going to show that that title was an absolute nullity. As any of the thirteen reasons would be sufficient, if well founded, to justify this action, it will be unnecessary to consider them all.
The tax sale of 1873 was made, the tax collector’s deed declares, under the provisions of Act No. 47 of 1873. The first section of that act declares that in case of refusal or neglect of any person against whom property is assessed to pay the taxes within ten days after the expiration of the public notice required by law, the tax collectormay give ten days’ written or printed notice to the owner or agent of the property assessed to pay said tax, after which delay, if not fully *1481 paid, the said tax collector may make a seizure of such property by recording a description of the same with the amount due in the mortgage book of the parish where it is situated, and on the fourth day of such recordation shall proceed to sell said property, without legal process, to pay said tax, and all lawful costs, after advertising three times within ten days in the official journal and in the country parishes where such publications can not be made by public notice for such ten days.
In the deed furnished by the tax collector to Baldwin the recitals are that after having made the necessary publications and advertisements, to-wit: in the Lake Providence Republican, a newspaper published in the parish of Carroll, said publications having been made on the 6th day of August, 1873, at the door of the court house in the parish of Carroll, on Levee street, between First and Second streets, town of Providence, parish of Carroll aforesaid, the following described property, to-wit: “N. 1-2 of S. W. 1-4 of See. 3; the S. 1-2 of N. W. 1-4, N. W. 1-4 of N. E. 1-4 of Sec. 10; E. 1-2 N. W. 1-4 of Sec. 22; all of Secs. 15 and 16; all of Secs. 11, 14, 23, 26 and 27, lying west of Bayou Macon, all in T. 22, R. 11 E., containing four thousand three hundred and thirty-nine and 14-100 acres, more or less, the same having been seized for the payment of taxes due by the estate of John H. Martin, as owner thereof according to the tableau and assessment rolls for the years 1867, 1869 and 1871, at which sale Annie Baldwin, residing at Cincinnati, being the highest and last bidder, the said property was adjudicated to the said Annie Baldwin for the full price and sum of five hundred and eighteen and 13-100 dollars, which I acknowledged to have been paid.”
This deed was executed on the 15th September, 1873.
The act No. 47 of 1873 took as a starting point of official action against delinquent tax-payers a “public notice required by law.” Within ten days from the giving of this notice tax collectors were directed to give notice to the owner or agent of the property to pay the tax; the notice to be given being authorized to be either written or printed. Ten days from the giving of this notice the tax collector was directed to make a“seizure” of the property, and this “seizure” was operated under the law by recording a description of the property with the amount due in the mortgage book of the parish where the land was situated. This “seizure” or “recording” under the law became the “starting point” for official action looking to a sale, for it was *1482 only after lour days had elapsed after this recording that the sheriff had authority to advertise. The statute fixed the time and manner of advertisement.
A comparison of the recitals of the-sheriff’s act with the requirements of this statute shows defects fatal to the deed. In the first place there is nothing to indicate that the original “public notice required by law” was ever made, nor that any notice, either written or printed, was ever given to the owner or agent, and in the next place there is nothing to show that any seizure of the property through the recording of its description with the amount of taxes due thereon was ever made. This “seizure,” through recording, as the law then stood, was a sacramental formality. It was not only the initial point for the running of certain delays, but it was- the very basis or warrant for subsequent action by the tax collector. It is claimed that the deed de'clares that the property had been “seized”' for the pay-' ment of the taxes; but this conclusion of the collector that a seizure had been made did not take the place of a re ital of the fact from which the seizure legally resulted. Again the tax collector, in reference to publications made by him, stated he had made the- “necessary” publications, placing a second time-his conclusions in the-deed instead of the facts themselves on which conclusions could be reached by those authorized to reach them. The collector was not authorized to do so. The statement made by him of the advertisements made was an imperfect one, and by no means showed advertisements during the time and manner exacted by the statute.
We are of the opinion that the sheriff’s deed was an absolute nullity and conveyed no title; certainly none- which the defendant could invoke.
Prom the record it would appear that John H. Martin left three heirs, Mrs. Gillmore (of whom the plaintiff is the vendee) -and two sons. One of these sons is shown to be still living and in this State, but nothing is shown as to the other. We must presume that he is still living. Under the circumstances what judgment should we render in the case? We are nob authorized to adjudge the plaintiff to be the owner of more than an undivided one-third interest in the property, but what action shall be taken- in regard to plaintiff’s prayer for possession, which, as it stands, is for the possession of the whole property? Should we restrict the decree for the possession to the possession of an undivided one-third of the property, or *1483 should we decree as against the defendant, who has no title, that possession of the whole property be given to the plaintiff?
In Compton vs. Matthews, 3 La. 128, this court held “that a joint proprietor could sue and maintain a petitory action against a mere possessor, without title, for the whole undivided succession or property.” The principle there enunciated has been several times reaffirmed and controls this ease.
The defendant not holding under either Baldwin or Campbell, his claim of subrogation from them is without basis. The liability of the plaintiff for reimbursement of taxes which may have been paid on this property can not be tested in the present suit. Any claim which defendant may have against the plaintiff for reimbursement of taxes paid on the property should be reserved. Font vs. McConnell, 46 An. 215.
For the reasons herein assigned it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that ihe plaintiff he recognized as, and declared the owner of one undivided third of the property claimed by him, and that he be placed in possession of the whole property as prayed for in his petition.
It is further ordered and decreed that defendant be reserved the right to claim from the plaintiff the repayment of taxes which have been paid on the property in litigation herein, for which the plaintiff is legally liable, and that the defendant pay the costs in both courts.